UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.:

JUDE CAMILLONE

    Plaintiff,

vs.

ADECCO USA, INC., a Foreign Profit Corporation
and GROCERY DELIVERY E-SERVICES USA INC.
a Foreign Profit Corporation (d/b/a) HelloFresh

    Defendants.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Jude CAMILLONE ("CAMILLONE" or "Plaintiff"), by and through his undersigned attorney, hereby brings Complaint against Defendants, ADECCO USA, INC. a Foreign Profit Corporation ("ADECCO" or " Defendant") and GROCERY DELIVERY E-SERVICES, USA, INC. a Foreign Profit Corporation (dba HelloFresh) ("HelloFresh" or "Defendant"), and alleges as follows:

**INTRODUCTION**

1.    Plaintiff brings these claims pursuant to the Fair Labor Standards Act as amended (29 U.S.C. § 201, *et seq.*, hereinafter called the "FLSA"), to recover from Defendant unpaid overtime compensation, liquidated damages reasonable attorneys' fees and costs, and any other damages permitted by law.

## PARTIES

2. Plaintiff, Jude CAMILLONE is a resident of Brevard County, Florida and was employed by Defendant Adecco USA, Inc.('Adecco') from December 2019 through April 2020, and was jointly employed by Defendant Grocery Delivery E-Services USA INC. (DBA Hello Fresh) HelloFresh on the same dates.

3. Defendants' compensated Plaintiff through the payment of an hourly wage of $11.00 per hour.

4. Defendant, ADECCO USA, INC.('Adecco'), is a Foreign Profit Corporation and is one of the largest staffing companies in the United States, which provides permanent and temporary staffing to companies throughout the United States and is headquartered in Jacksonville, Florida with offices in forty-seven states.

5. Defendant Grocery Delivery E-Services USA INC. (DBA Hello Fresh) is a Foreign Profit Corporation headquartered in New York and offers customers a food delivery service online.

6. Defendants' currently employs several thousand individuals, like Plaintiff, at call centers across the United States.

7. Adecco directly employed Plaintiff and assigned him to work for HelloFresh.

8. HelloFresh jointly employed Plaintiff as a non-exempt hourly paid Customer Service Representative("CSR"), at its Melbourne call center.

9. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Plaintiff in Defendants 'call center, are homogenous and issued guidance to alert and condemn an employer's non-payment of an employee's necessary preliminary and postliminary activities. *See generally* DOL Fact Sheet #64, attached hereto as Exhibit 1.

Specifically, the DOL stated:

> "hours worked" includes ***all time*** an employee must be on duty, or ***on the employer's premises*** or at any other prescribed place of work, ***from the beginning of the first principal activity*** of the workday to the end of the last principal activity of the workday An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails. *See id*. at 2 (emphasis added). Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

10. Defendants' required Plaintiff to work a full-time schedule, plus overtime. However, Defendants did not compensate Plaintiff for all work performed; instead, Defendants only paid Plaintiff after he had to load several essential software programs on their computers and was available to accept calls. This uniform policy resulted in Plaintiff not being paid for all time worked, including overtime.

11. In addition, Defendants required Plaintiff to perform off-the-clock work during his shifts when he would encounter technical difficulties with Defendants' software programs and applications and at the end of his shifts when he was required to shut down and log-out of the essential computer software used to perform his job.

12. Plaintiff used multiple computer programs, software programs and applications while performing his responsibilities. These programs and applications were an integral, indispensable and important part of Plaintiff's work, and he could not perform his job effectively without them.

13. Defendants' knew or could have easily determined how long it took Plaintiff to perform his off-the-clock work and could have properly compensated Plaintiff for this work but did not.

**JURISTRICTION AND VENUE**

14. Defendants' annual sales exceed $500,000, and they have more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendants' employees—including Plaintiff—engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

15. This Court has personal jurisdiction over Defendant, Adecco because Adecco is Registered with the Florida Department of Corporations to conduct business within Florida, and Adecco systematically and continuously conducts business within the State of Florida.

16. This Court has personal jurisdiction over Defendant, HelloFresh because HelloFresh is Registered with the Florida Department of Corporations to conduct business within Florida, and HelloFresh systematically and continuously conducts business within the State of Florida.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct substantial business within this District, and because a substantial portion of the events that give rise to the claims pled in this Complaint occurred in this District.

**JOINT EMPLOYER ALLEGATIONS**

18. Under the FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

19. The definition of "employer" under the FLSA is not limited by the common law concept of "employer," and is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes. *Real v. Driscoll Strawberry Assocs.*, 603 F.2d 748, 754 (9th Cir. 1979).

20. Congress defined "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), describing this language as "the broadest definition that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 (1945) (quoting 81 Cong. Rec. 7657 (1937) (statement of Sen. Hugo Black)); *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 300 (1985) (same).

21. The determination of whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v.McComb*, 331 U.S. 722, 730 (1947). The touchstone is "economic reality." *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961).

22. Two or more employers may jointly employ someone for purposes of the FLSA. *Falk v.Brennan,* 414 U.S. 190, 195 (1973). All joint employers are individually responsible for compliance with the FLSA. 29 C.F.R. § 791.2(a) (1981).

23. Regulations issued by the DOL give the following examples of joint employment situations:

(2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or

(3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

C.F.R. § 791.2(b) (footnotes omitted).

24. The ultimate question of whether a party is an "employer" is a legal issue. *Bonnette v.California Health & Welfare Agency*, 704 F.2d 1465, 1469–70 (9th Cir. 1983). The ultimate determination must be based "upon the circumstances of the whole activity." *Id.* at 1470 (citing *Rutherford Food Corp.v. McComb,* 331 U.S. 722 (1947)).

25. Defendants' jointly employed Plaintiff.

26. Adecco pays Plaintiff and issues W-2 wage and tax statements to Plaintiff.

27. Adecco furnished Plaintiff with the Adecco Employee Handbook.

28. On information and belief, Adecco assigns all or substantially all of HelloFresh's CSR's like Plaintiff.

29. On January 20, 2016, the DOL issued Administrator's Interpretation No. 2016-1, addressing joint employment under the FLSA and Migrant and Seasonal Agricultural Worker Protection Act. (Exhibit 10, Administrator's Interpretation No. 2016-1.) As explained by the DOL, "Vertical joint employment exists where the employee has an employment relationship with one employer (typically a staffing agency, subcontractor, labor provider, or other intermediary employer) and the economic realities show that he or she is economically dependent on, and thus employed by, another entity involved in the work." (Id., (emphasis added).)

> Examples of situations where vertical joint employment might arise include garment workers who are directly employed by a contractor who contracted with the garment manufacturer to perform a specific function, *see Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71-72 (2d Cir. 2003); **nurses placed at a hospital by staffing agencies**, *see Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 143-49 (2d Cir. 2008); or warehouse workers whose labor is arranged and overseen by layers of intermediaries between the workers and the owner or operator of the warehouse facility, *see Carrillo v. Schneider Logistics Trans-Loading & Distrib., Inc.*, 2014 WL 183956, at *9-15 (C.D. Cal. Jan. 14,2014). *See also A-One Med. Servs.*, 346 F.3d at 917; *Lantern Light*, 2015 WL 3451268, at *3 (where company has contracted for workers who are directly employed by an intermediary, court applies vertical joint employment analysis to relationship between company and workers); *Berrocal v. Moody Petrol., Inc.*, 2010 WL 1372410, at *11 n.16 (S.D. Fla. Mar. 31, 2010) (vertical joint employment may exist when "an employer hires laborers through a third party labor contractor").

(*Id.*, (emphasis added).)

30. The fact that each Defendant may not have exercised each and every aspect of the test for employer under the law, and may have delegated some of the responsibilities to others, does not alter their status as employers; it merely makes them joint employers. *Bonnette, supra* at 1470.

31. Whether employers, or joint employers, each Defendant is nevertheless liable for the wage violations pleaded in this Complaint. *Falk, supra;* 29 C.F.R. § 791.2(a).

32. Upon information and belief, Defendants jointly employed hundreds of CSR's including Plaintiff—across various states throughout the country in the last several years.

## GENERAL ALLEGATIONS

33. As a CSR for Defendants, Plaintiff was responsible for, among other things, "taking online orders, processing orders, providing support for HelloFresh's customers' across the country.

34. Plaintiff, as well as all CSR's for Defendants use similar computer networks, software programs and applications while performing their job responsibilities. These programs and applications are integral and an important part of CSR's work, and they cannot perform their jobs without them.

35. Plaintiff as well as all CSR's for Defendants receive substantially the same training, are subject to the same disciplinary policies, and are subject to quality assurance reviews based on the same or similar criteria.

36. The evidence unequivocally shows that Defendants' maintains a company-wide policy and practice of requiring Plaintiff and all other CSR's to perform substantial amounts of work activities off the clock (*i.e.*, unpaid).

37. For example, Defendants expressly instructed and Plaintiff to have all his computer networks, software programs and applications opened and ready *before* starting his shifts, so that they he would be available and ready to take calls as soon as his shifts start.

38. Throughout Plaintiff's employment with Defendants, he regularly worked at least forty (40) hours per workweek.

39. Plaintiff was regularly required to work a substantial amount of time off-the-clock as part of his job duties as a call center employee.

40. Plaintiff was never compensated for this time worked off-the-clock.

41. 29 C.F.R. § 553.221 provides that:

> Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity, such as attending roll call, writing up and completing tickets or reports, and washing and re-racking firehoses.

42. 29 C.F.R. § 790.8 provides that "[a]mong activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance."

43. The FLSA subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records. 29 C.F.R. § 516.1.

44. An employer is mandated to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and the total hours worked by each employee each workweek. *See id*. § 516.2.

45. Upon information and belief, Defendant failed to establish, maintain and preserve accurate timesheet and payroll records as required by the FLSA.

46. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946) is controlling.

That rule states:

> [w]here the employer's records are inaccurate or inadequate an employee has carried out his burden if he proves that he has in fact performed worked for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. *Id*.

47. The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the Act." *Id.*

### A. Pre-Shift and Post-Lunch Off-the-Clock Work.

48. Plaintiff was tasked with providing Defendants' clients with customer service by use of Defendant's telephones, Defendant's computers, and the programs accessible from Defendant's computers.

49. Defendant required Plaintiff to arrive at the call center before his scheduled shifts to boot up his computer and launch and log into necessary programs, servers, and applications to ensure they he was ready to take his first call at his scheduled shift start. This pre-shift procedure regularly

took between ten (10) minutes, to thirty (30) minutes, per shift, or even longer if technical issues arise. Only after this pre-shift procedure was completed was Plaintiff allowed to clock-in to Defendant's timekeeping system at the scheduled start of his shift.

50. Defendants' required Plaintiff to log out of his necessary programs, servers, and applications and shut down his computer before taking his unpaid lunch break period.

51. Defendants' required Plaintiff to return to his desk before the scheduled end of his unpaid lunch period because Plaintiff was required undergo the same boot up procedure he followed at the beginning of his shift. Plaintiff was required to return to his desks before the scheduled end of his unpaid lunch period to ensure he was ready to take his first call at his scheduled shift start. This boot up procedure post-lunch regularly took between ten (10) minutes, to thirty (30) minutes, or even longer if technical issues arise. Only after this process was completed was Plaintiff allowed to clock-in to Defendant's timekeeping system and resume working.

52. The pre-shift and post-lunch boot up procedures are integral and indispensable to the performance of Plaintiff's principal job duties.

53. The unpaid pre-shift and post-lunch off-the-clock work performed by Plaintiff directly benefited Defendants.

54. Defendants' knew, or should have known, that its employees are required to be paid for all compensable time throughout the workweek. *See* 29 C.F.R. § 553.221; *id*. at § 790.8; *id*. at § 785.19(a).

55. Despite this, Defendants' failed to compensate Plaintiff for his off-the-clock pre-shift or post-lunch compensable work performed in any amount.

56. Defendants' knew, or should have known, that the FLSA, 29 U.S.C. § 207, required them to compensate non-exempt employees who work in excess of forty (40) hours in a workweek at a rate of one and one-half (1.5) times their regular rate of pay—including the compensable off-

the-clock pre- shift or post-lunch work performed.

57. Despite this, Defendants' failed to compensate Plaintiff for his off-the-clock pre-shift or post-lunch compensable work performed in excess of forty (40) hours in a workweek at one and one-half (1.5) times his regular rate of pay.

## CAUSES OF ACTION

### COUNT I-VIOLATION OF THE FLSA
### 29 U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES

58. Plaintiff re-alleges and incorporate all previous paragraphs herein and further alleges as follows.

59. At all times relevant to this Action, Defendants were "employers" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

60. Upon information and belief, Defendants' annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

61. Defendants are engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

62. At all times relevant to this Action, Plaintiff was an "employee" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

63. Plaintiff was either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

64. Defendant's employees, including Plaintiff, engage in interstate commerce—including, but not limited to utilizing telephone lines and Internet—and therefore, they are also

covered by the FLSA on an individual basis.

65. The position of Customer Service Representative is not exempt from the FLSA.

66. Defendant's other job titles performing similar Customer Service Representative job duties are not exempt from the FLSA.

67. At all times relevant to this Action, Defendants "suffered or permitted" Plaintiff to work and thus "employed" him within the meaning of the FLSA, 29 U.S.C. § 203(g).

68. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half (1.5) times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. *See* 29 U.S.C. § 207.

69. Upon information and belief, Defendants have corporate policies of evading overtime pay for its hourly workers.

70. Defendants violated the FLSA by suffering or permitting Plaintiff to routinely perform off-the-clock pre-shift and post-lunch work by not allowing him to clock-in until after the pre-shift and post-lunch procedures were complete.

71. Defendants violated the FLSA by failing to pay Plaintiff the federally mandated overtime premiums for off- the-clock hours worked in excess of forty (40) hours per workweek.

72. Defendant's violations of the FLSA were knowing and willful.

73. By failing to compensate Plaintiff at a rate not less than one and one-half (1.5) times his regular rate of pay for all work performed in excess of forty (40) hours in a workweek, Defendants have violated the FLSA, 29 U.S.C. § 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

74. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in his favor against Defendants, and that this Court:

    a.    Declare, pursuant to the FLSA, that the acts and practices complained of herein are in violation of the maximum hour provisions of the FLSA;

    b.    Award Plaintiff overtime compensation in the amount due to him for time worked in excess of forty (40) hours per work week;

    c.    Award Plaintiff liquidated damages in an amount equal to the overtime award;

    d.    Award Plaintiff reasonable attorneys' fees and costs and expenses of the litigation pursuant to 29 U.S.C. §216(b);

    e.    Award Plaintiff pre-judgment interest; and

    f.    Order any other and further relief that this Court deems just and proper.

**WHEREFORE**, Plaintiff requests a judgment in his favor and against Defendant for his actual and compensatory damages, including, but not limited to, front pay, back pay, and emotional distress damages, as well as his costs and attorneys' fees, declaratory and injunctive relief and such other relief deemed proper by this Court.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as a matter of right by jury. Dated this 28th day of August, 2020.

Respectfully submitted,

*/s/ Alexander Harne*
Alexander Harne, Esq.
Florida Bar No. 126932

RICHARD CELLER LEGAL, P.A.
10368 West State Road 84, Suite 103
Davie, Florida 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
E-mail:
**aharne@floridaovertimelawyer.com**

*Counsel for Plaintiff*